UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
IN RE:                                                       :
                                                             :    1:22-md-03028-PAE
ONE APUS CONTAINER SHIP INCIDENT                             :
ON NOVEMBER 30, 2020                                         :
                                                             :
*This document relates to*                                   :
ALL CASES                                                    :
                                                             :
                                                             :
                                                             :    NOVEMBER 23, 2022
-------------------------------------------------------------X

## THE NVOCCs' MEMORANDUM IN SUPPORT OF
## THEIR MOTION FOR ALTERNATIVE SERVICE OF PROCESS

Dated: New York, NY
       November 23, 2022                  NVOCC Liaison Counsel,

                                          /s/ Thomas L. Tisdale
                                Thomas L. Tisdale
                                Timothy J. Nast
                                Tisdale & Nast Law Offices, LLC
                                Chrysler Building
                                405 Lexington Ave., 26th Floor
                                New York, NY 10174
                                *ttisdale@tisdale-law.com*
                                *tnast@tisdale-law.com*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT..................................................................................1

I. BACKGROUND...........................................................................................2

II. LEGAL STANDARD....................................................................................5

III. ARGUMENT.................................................................................................6

A. Court-Ordered Alternative Service is Warranted................................................6

    1. The NVOCCs have reasonably attempted to serve Chidori and Jessica............7

    2. The circumstances of this case warrant the Court's intervention.....................9

B. Service on U.S. Counsel is Not Prohibited by Federal Law or International Agreement...10

    1. The method of requested alternative service does not require the transmittal of documents abroad; thus, International Conventions do not apply...........................................................................................10

    2. *Smart Study Co. v. Acuteye-US* is inapplicable to the requested manner of alternative service...............................................12

C. Service on U.S. Counsel Comports with Due Process........................................14

# TABLE OF AUTHORITIES

**CASES**

*Atlantica Holdings, Inc. v. BTA Bank JSC*
    13 Civ. 5790 (JMF), 2014 WL 12778844 (S.D.N.Y. Mar. 31, 2014)......................5,8

*In re BRF S.A. Sec. Litig.*,
    18-cv-2213 (PKC), 2019 WL 257971 (S.D.N.Y Jan. 18, 2019)..........................passim

*Brockmeyer v. May*,
    383 F.3d 798 (9th Cir. 2004).................................................................................6

*Crockett v. Luitpold Pharm., Inc.*,
    No. 19-276, 2020 WL 4039046 (E.D. Pa. July 17, 2020)......................................12

*DS-Rendite Fonds Nr. 108 VLCC Ashna GmbH v. Essar Capital Americas, Inc.*
    882 F.3d 44 (2d Cir. 2018)....................................................................................3

*Export–Import Bank v. Asia Pulp & Paper Co., Ltd.*,
    No. 03 Civ. 8554(LTS)(JCF), 2005 WL 1123755 (S.D.N.Y. May 11, 2005)................6

*Fairfield Setry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
    Case No. 10-13164 (SMB), 2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020)......6, 11

*In re GLG Life Tech Corp. Sec. Litig.*,
    287 F.R.D. 262 (S.D.N.Y. 2012)......................................................................passim

*Luessenhop v. Clinton Cnty., N.Y.*,
    466 F.3d 259 (2d Cir. 2006)..................................................................................5

*OC Glob. Partners, LLC v. Adaime*,
    21-cv-10686 (LJL), 2022 WL 769328 (S.D.N.Y. Mar. 14, 2022).......................passim

*Peter Moses Gutierrez Jr., et al. v. Amplify Energy Corp. et al.*,
    8.21-CV-01628-DOC-JDE, (Dkt. 177)...................................................................10

*RSM Prod. Corp. v. Fridman*,
    06 Civ. 11512 (DLC), 2007 WL 1515068...........................................................5-6

*In re Sinohub, Inc. Sec. Litig.*,
    No. 12 Civ. 8478 (WHP), 2013 WL 4734902 (S.D.N.Y. Aug. 14, 2013)...............passim

*Smart Study Co. v. Acuteye-US*,
    1:21-cv-5860-GHW, 2022 WL 2872297 (S.D.N.Y. July 21, 2022)....................passim

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
    486 U.S. 694 (1988)............................................................................................11

*Wash. State Inv. Bd. v. Odebrecht S.A.*,
    17 Civ. 8118 (PGG), 2018 WL 6253877 (S.D.N.Y. Sept. 21, 2018)..........................5


**INTERNATIONAL CONVENTIONS**

Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965,
    20 U.S.T. 361, 658 U.N.T.S. 163..........................................................passim

Inter-American Convention on Letters Rogatory, Jan. 30, 1975, and the Additional Protocol to the Inter-American Convention on Letters Rogatory, May 8, 1979,
    S. Treaty Doc. No. 98-27, 53 Fed. Reg. 31,132 (1988)..................................passim

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
IN RE:                                            :
                                                  :         1:22-md-03028-PAE
ONE APUS CONTAINER SHIP INCIDENT                  :
ON NOVEMBER 30, 2020                              :
                                                  :
This document relates to                          :
ALL CASES                                         :
                                                  :
                                                  :
                                                  :         NOVEMBER 23, 2022
-----------------------------------------------------------X
```

## MEMORANDUM IN SUPPORT OF MOTION FOR ALTERNATIVE SERVICE

The NVOCCs, through their liaison counsel, Tisdale & Nast Law Offices, LLC, submit this Memorandum in Support of their Motion for Alternative Service.

## PRELIMINARY STATEMENT

Pursuant to Federal Rule of Civil Procedure 4(f)(3), the NVOCCs respectfully submit this memorandum in support of their motion for leave to serve their summonses and verified complaints, third party complaints, fourth party complaints, crossclaims, or any other pleadings ("claims") which assert claims against Chidori Ship Holding LLC ("Chidori") and Jessica Ship Holding S.A. ("Jessica"), by personal service, First-Class mail and/or e-mail to Chidori and Jessica's respective U.S. counsel. A Proposed Order is attached to the motion as Exhibit A.

This Multidistrict Litigation involves claims by cargo interests and their subrogated insurers against a multitude of non-vessel-operating common carriers ("NVOCCs")[1], vessel operating common carriers ("VOCCs"), and other interests arising out of the alleged container

---

[1] "A Non-Vessel-Operating Common Carrier is a common carrier that holds itself out to the public to provide ocean transportation, issues its own house bill of lading or equivalent document, and does not operate the vessels by which ocean transportation is provided…"*Federal Maritime Commission*, Ocean Transportation Intermediaries, (July 29, 2022, 7:12 a.m.) https://www.fmc.gov/resources-services/ocean-transportation-intermediaries/#:~:text=A%20Non %2DVessel%2DOperating%20Common,which%20ocean%20transportation%20is%20provided

stow collapse aboard the containership M/V ONE APUS (the "Vessel") on or about November 30, 2020, when an estimated 1,800 containers were allegedly lost at sea and other containers were damaged but remained aboard ship (the "Incident"). As a result of the Incident, lawsuits were filed all across the United States, which led to the consolidation of all those actions before the Judicial Panel on Multidistrict Litigation. On June 1, 2022, the MDL Panel assigned these matters to the Honorable Paul A. Engelmayer.

To protect their interests, various NVOCCs filed their claims[2] against the Vessel, *in rem*; the Vessel's owner, Chidori; the Vessel's bareboat charterer, Jessica; the Vessel's management company, NYK Shipmanagement, and various VOCCs and/or bill of lading issuers. The NVOCCs have requested that Chidori and Jessica (collectively "Vessel Interests") waive service, as they have actual knowledge of this action and have participated in this MDL. However, Jessica and Chidori have so far declined to do so.

The NVOCCs respectfully move this Court to allow for service of pleadings asserting claims on the known U.S. counsel for Chidori and Jessica, to expedite this MDL without the certain delay by service through international treaty. The less favorable alternative, would require the Court to grant the NVOCCs an additional 12 months to proceed with service through international treaty, which would delay the entire case by that amount of time.

I.  **BACKGROUND**

Prior to the consolidation of all the actions into this MDL Action, the NVOCCs were sued by cargo interests and their subrogated cargo insurers in relation to the Incident in federal and state courts across the country.

---

[2] Due to the number of member cases and NVOCCs appearing and filing complaints, third party complaints, fourth complaints, and crossclaims, for purposes of this Motion, the NVOCCs shall not specify the details of each claim. However, these Claims assert causes of actions for indemnity, contribution, cargo damage, and other causes of action arising from the ONE APUS Incident.

To protect their interests, the NVOCCs filed and continue to file their respective Claims against vessel interests of the M/V ONE APUS. Among the Claims filed by the NVOCCs are causes of action for indemnity/contribution and other maritime causes of action for cargo loss or damage against the Vessel, *in rem*, and *in personam* against the owner of the Vessel, Chidori, the bareboat charterer of the Vessel, Jessica, various Vessel Operating Common Carriers, and the Vessel's management company.

Earlier in these proceedings, some of the NVOCCs (and cargo counsel) threatened to arrest the ONE APUS pursuant to Rule C of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules") when the Vessel was expected to call in the Port of New York. As a result, and wishing to avoid the arrest of the ONE APUS, a Letter of Undertaking was issued whereby counsel for the Vessel agreed to enter a restricted appearance for the Vessel *in rem* in all of the pending cases in which claims had been filed against the Vessel. Later, NVOCCs' counsel wrote the Vessel's counsel to see if they would also be appearing on behalf of Chidori and Jessica, the Owners and bareboat charterers of the ONE APUS, and if so, whether they would accept service of process on their behalf. This invitation was declined. Subsequently, a Third-Party Complaint was filed on behalf of two NVOCCs Vanguard Logistics Services (Hong Kong) Ltd. and Vanguard Logistics Services (collectively "Vanguard") in which Vanguard sought to attach Jessica and Chidori's interest in the Vessel pursuant to Supplemental Rule B. (Dkt. 8). In addition to providing security for a claim, a Rule B attachment also provides *quasi in rem* jurisdiction over the defendant, up to the amount of the attachment. *DS-Rendite Fonds Nr. 108 VLCC Ashna GmbH v. Essar Capital Americas, Inc.* 882 F.3d 44, 47 (2d Cir. 2018). Ultimately, Chidori and Jessica agreed to issue a Letter of Undertaking as security for the claims against Chidori and Jessica in which counsel agreed to file Restricted Appearances and Statements

3

of Interest on behalf of Jessica and Chidori. (Tisdale Decl., ¶ 5). Vessel Counsel has also informed this Court of their intention to file Restricted Appearances on behalf of Chidori and Jessica prior to August 8, 2022, and have filed said appearances, and/or motions for admission *pro hac vice*, and answers to many of the complaints lodged against the Vessel in the MDL Action.

Various NVOCCs transmitted Notices of Lawsuits and Requests for Waiver of Service of the Summons and Complaint together with the required copies of the pleadings and waivers to Jessica in Panama, Chidori in Japan, and their U.S. counsel. However, these requests were ignored or the NVOCCs were advised that no waivers would be issued and/or that counsel was not authorized by Jessica and/or Chidori to accept service of process. (Tisdale Decl. ¶¶ 6,7). Liaison counsel understands that other NVOCCs have received similar responses to waiver requests.

Liaison counsel for the NVOCCs contacted ABC Legal Services, Inc. ("ABC Legal") to inquire as to the time required to effect service on Chidori and Jessica, in their respective countries, pursuant to the Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention"), and the Additional Protocol to the Inter-American Convention on Letters Rogatory ("IAC"). (Nast Declaration, ¶¶ 3, 4). Pursuant to a contract with the U.S. Department of Justice, ABC Legal manages all formal requests for service of judicial and extrajudicial documents pursuant to the Hague Conventions and IAC. ABC Legal responded to Mr. Nast's e-mail on November 16, 2022, and stated:

> We would expect service in Panama under the Inter-American Convention and service in Japan under the Hague Convention to both take between 6 months and a year.

(Declaration of Timothy J. Nast, **Ex. A**) (hereafter "Nast Decl.").

We understand counsel for other NVOCCs have obtained similar information. As the anticipated wait times to effectuate service pursuant to the Hague Convention and IAC range from six months to a year with no certainty, if this Court does not permit alternative service, then these proceedings will be delayed for a minimum of one year. Moreover, the expense of translating all pleadings into Japanese, Spanish, and any other languages together with the fees associated with effecting service, will be exorbitant, especially with the large numbers of NVOCCs which are parties to these proceedings.

## II. LEGAL STANDARD

Fed. R. Civ. P. 4(f) governs the service of foreign corporate defendants in the U.S. federal courts. Pursuant to Rule 4(f)(3), service may be effectuated on a foreign defendant by court order, as long as the form of service is not prohibited by federal law or international agreement and comports with due process. *See Wash. State Inv. Bd. v. Odebrecht S.A.*, 17 Civ. 8118 (PGG), 2018 WL 6253877, at *10 (S.D.N.Y. Sept. 21, 2018); *Atlantica Holdings, Inc. v. BTA Bank JSC*, 13 Civ. 5790 (JMF), 2014 WL 12778844, at *2 (S.D.N.Y. Mar. 31, 2014); *In re Sinohub, Inc. Sec. Litig.*, No. 12 Civ. 8478 (WHP), 2013 WL 4734902, at *2 (S.D.N.Y. Aug. 14, 2013); *In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 265 (S.D.N.Y. 2012). Service comports with due process if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Luessenhop v. Clinton Cnty., N.Y.*, 466 F.3d 259, 269 (2d Cir. 2006). Service of process on a foreign defendant pursuant to Rule 4(f)(3) is neither a last resort nor extraordinary relief, and is as preferred as any of the other forms of service under Rule 4(f). *In re Sinohub, Inc.*, 2013 WL 4734902, at *2; *In re GLG Life Tech*, 287 F.R.D. at 265. "The decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the sound discretion of this district court." *RSM Prod.*

5

*Corp. v. Fridman*, 06 Civ. 11512 (DLC), 2007 WL 1515068, at *1 (S.D.N.Y. May 24, 2007) (quoting *Brockmeyer v. May*, 383 F.3d 798, 805 (9th Cir. 2004)).

Exercising their discretion, and to prevent plaintiffs from "whimsically seeking alternative means of service," courts *may* require that the movant show "that they have reasonably attempted to effectuate service on the defendant(s) and that the circumstances are such that the district court's intervention is necessary." *In re Sinohub, Inc.*, 2013 WL 4734902, at *2 (quoting *Export–Import Bank v. Asia Pulp & Paper Co., Ltd.*, No. 03 Civ. 8554(LTS)(JCF), 2005 WL 1123755, at *4 (S.D.N.Y. May 11, 2005)); *see also*, *In re BRF S.A. Sec. Litig.*, 18-cv-2213 (PKC), 2019 WL 257971, at *2 (S.D.N.Y Jan. 18, 2019); *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, Case No. 10-13164 (SMB), 2020 WL 7345988, at *11 (Bankr. S.D.N.Y. Dec. 14, 2020).

### III.   ARGUMENT

#### A.   Court-Ordered Alternative Service is Warranted.

The Vessel, Chidori and Jessica agreed to participate in the MDL Action and have even made or promised to make appearances through their respective U.S. counsel in one or more of the MDL Action's member cases. To compel the NVOCCs to attempt to effectuate service through the Hague Convention and IAC would be needlessly expensive and time consuming, as service through international convention or agreement would take anywhere from six months to one year at a minimum, depending on the country in which service is to be made. The NVOCCs have reasonably attempted to serve Chidori and Jessica, by sending waivers of service to each of them as well as their appointed counsel, without success. Court intervention is necessary to ensure that the MDL Action proceeds without unnecessary delay and cost. Chidori and Jessica, as the owner and bareboat charterer of the Vessel, respectively, already have notice of the MDL Action and the

NVOCCs' claims. The possibility for service of process to be effectuated by Rule B has been considered (although it is wholly dependent on the vessel's presence in the jurisdiction which can be avoided by Jessica and Chidori by simple keeping the ONE APUS out of Unites States territorial waters. The Court should authorize the NVOCCs to serve Chidori and Jessica by serving their appointed counsel.

### 1. The NVOCCs have reasonably attempted to serve Chidori and Jessica.

When deciding whether to authorize service under Rule 4(f)(3), the court *may* require the movant to show that he or she has reasonably attempted to serve the foreign defendant. *Export–Import Bank*, 2005 WL 1123755, at *4. In the present case, if this Court requires such a showing, the NVOCCs have met this threshold.

After the filing of the NVOCCs' pleadings, counsel for the NVOCCs contacted known U.S. counsel for the Vessel and requested that Chidori and Jessica waive formal service of process. (*See* Tisdale Decl., ¶ 7). Although U.S. counsel for Chidori and Jessica and have actively participated in MDL Action or one of its member cases,[3] the parties that the NVOCCs seek to serve have either refused or failed to respond to formal requests to waive service. (*Id.*, ¶¶ 4-7). Waivers of service and the accompanying pleadings were also sent to Chidori and Jessica but the waivers have never been returned.

Courts in this district have recognized that plaintiffs which have requested waiver of service on known counsel of a foreign defendant made reasonable attempts to effectuate service under Rule 4(f)(3). *See OC Glob. Partners, LLC v. Adaime*, 21-cv-10686 (LJL), 2022 WL 769328, at *2 (S.D.N.Y. Mar. 14, 2022) (granting motion for alternative service on foreign defendant under

---

[3] (C.D. Cal., Case No. 1:22-cv-06386, ECF No. 82). Chidori and Jessica have granted security for alleged claims to numerous parties in the MDL Action in lieu of the arrest of the Vessel and have filed appearances in the MDL Action. (MDL Action, ECF Nos. 25, 27, 27, 32).

Rule 4(f)(3), noting that plaintiff first requested waiver of service, even though counsel for defendant stated they were not authorized to accept nor waive service); *Atlantica Holdings, Inc.*, 2014 WL 12778844, at *3 ("Further, although Plaintiffs admittedly have not sought to undertake the costly and time-consuming option of service via letters rogatory, they did diligently seek to negotiate acceptance of service with [defendant's counsel].").

In *OC Glob. Partners*, foreign defendants moved the court to reconsider a previous order granting plaintiff's motion permitting alternative service on defendants located in Uruguay and Brazil. 2022 WL 769328, at *1. In their motion, defendants requested that the court reconsider its order permitting alternative service because the plaintiff failed to attempt service through the Hague Convention, and that the plaintiff failed to make a reasonable attempt at serving the defendant located in Uruguay. *Id.* at *2. In denying the defendants' motion to reconsider, the court reasoned that beginning the process of service through an international convention is not a prerequisite, nor requirement for the court to permit service by an alternative means. *Id.* at *2-3 (citing *In re BRF*, 2019 WL 257971, and *Odebrecht*, 2018 WL 6253877). The court held that the plaintiff had reasonably attempted to serve the foreign defendants by requesting that the defendants' counsel waive service. *Id.* at *2.

As in *OC Glob. Partners*, the NVOCCs have sought waiver of service from Chidori and Jessica, and their counsel, and counsel for the NVOCCs investigated effectuating service through an international treaty by contacting the U.S. Department of Justice's contractor for handling foreign service. (*See* Nast Decl.); *see also, OC Glob. Partners*, 2022 WL 769328, at *2 ("Moreover, Plaintiff has submitted evidence, in the form of correspondence with the agency that manages all formal requests for service of judicial and extrajudicial documents pursuant to the Hague Convention and the Inter-American Convention..."). Also, like in *OC Glob. Partners*,

ABC Legal had advised counsel for the NVOCCs that the current *expected* wait times for service in the home countries of the Vessel Interests ranges anywhere from six month to a year for service. (Nast Decl., ¶ 4). The NVOCCs have more than reasonably attempted service before moving for authorization to serve Chidori and Jessica and these parties have also been actively participating in this MDL Action and member cases.

### 2. The circumstances of this case warrant the Court's intervention.

The NVOCCs are not whimsically seeking this Court to authorize service by alternative means, but rather seek intervention from this Court when making service through international treaty to parties who are well aware of this litigation would needlessly delay this litigation. When determining if court intervention is appropriate for service under Rule 4(f)(3), "each case must be judged on its facts." *In re GLG Life Tech*, 287 F.R.D. at 266. Delay pursuant to the Hague Convention and the IAC have been found reason enough to authorize service under Rule 4(f)(3). *See id.* ("Additionally, the Court is concerned that the length of time required for service under the Hague Convention, approximately six to eight months, may unnecessarily delay this case."); *In re BRF*, 2019 WL 257971, at *4 (holding that alternative service was appropriate under Rule 4(f)(3), as service through the IAC "would be lengthy and convoluted," and "could prolong resolution and complicate the progress of [the] case.").

Not only are the wait times to effectuate service between the home countries of Chidori and Jessica inconsistent and could take anywhere from six months to a year, but the COVID 19 pandemic is still a factor which may further delay service. *See also, OC Glob. Partners*, 2022 WL 769328, at *2 (noting that delays represented by ABC Legal, *i.e.*, complexity of service by international treaty and COVID-19 delays, warrants alternative service). Forcing the NVOCCs to serve process through the Hague Convention and IAC would result in unnecessary delays as

Chidori and Jessica would in all likelihood be served at different times by the various NVOCCs and cargo interests, likely months apart, although each party is aware of the MDL Action and each of the member actions they have been named in, and have participated and appeared in some capacity. The surrounding circumstances in this case strongly weigh in favor of authorization of alternative service under Rule 4(f)(3).

This MDL case is somewhat of an anomaly in large maritime casualty cases where many parties are participants, which generally involve a limitation of liability action filed on behalf of the shipowner and/or bareboat charterer which brings with it the procedural monition and concursus. (46 U.S.C. 30501 *et seq.*). When a limitation action has been filed, courts regularly grant claimants the right to serve the foreign parties by alternative means. *See e.g., Peter Moses Gutierrez Jr., et al. v. Amplify Energy Corp. et al.*, 8.21-CV-01628-DOC-JDE, (ECF No. 177) (court grants alternative service when "Defendants specifically appeared through counsel in the case … meaning there is already evidence of actual notice.")

B. **Service on U.S. Counsel is Not Prohibited by Federal Law or International Agreement.**

　　1. **The method of requested alternative service does not require the transmittal of documents abroad; thus, International Conventions do not apply.**

The NVOCCs seek authorization to alternatively serve their pleadings on Chidori and Jessica, by effectuating service on their U.S. counsel of record in the MDL Action. *See In re GLG Life Tech*, 287 F.R.D. at 267 ("In many instances, courts have authorized service under Rule 4(f)(3) on an unserved party's counsel.") (citing cases). Rule 4(f)(3) permits service by alternative means, as long as it is not "prohibited by international agreement." *See In re BRF*, 2019 WL 257971, at *2. Service of the NVOCCs' verified complaints does not run afoul of either the Hague

10

Convention or the IAC, because *the proposed service does not require the transmittal of documents abroad.* (Emphasis added).

In *GLG Life Tech*, plaintiffs moved the court for an order to serve a foreign defendant by alternative means pursuant Rule 4(f)(3). 287 F.R.D. at 263. One defendant was located in China. After inquiring about how to serve the defendant residing in China, plaintiffs contacted appearing counsel for the corporate defendant requesting waiver of service of process on behalf of the defendant in China. After receiving no reply, plaintiffs filed their motion seeking authorization to serve the remaining defendant via appearing counsel for the corporate defendant, among other alternative methods. *Id.* at 263-264. In granting plaintiffs' motion, the court held that service on counsel of a foreign party within the United States would not run afoul of the Hague Convention, because "no documents would be transmitted abroad." *Id.* at 267 (citing and fully discussing the holding in *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988)). The court next addressed the nexus that must be present between the foreign individual and the proposed counsel to be served, stating that the moving party "must show adequate communication between the individual and the attorney." *Id.* The court held that circumstances of the case "virtually guaranteed" notice would be given to the remaining foreign defendant, as "it is impossible to imagine that a corporation's attorney would not advise the corporation's Chairman and Chief Executive Officer of the fact that service destined for that officer had been made upon its attorney." *Id.*

As held in *GLG Life Tech*, the Hague Convention is inapplicable in situations where service is effectuated under Rule 4(f)(3) on defendant's counsel in the U.S., *where no documents were to be transmitted abroad. See id.* (emphasis added); *Fairfield Sentry Ltd.*, 2020 WL 7345988, at *12 ("When service is made on domestic counsel, the Hague Service Convention is not implicated

11

because no documents are transmitted abroad."). As for Panama (home of Jessica), it is a signatory to the IAC. However, the IAC "does not prohibit any particular method of service," thus, there is no prohibition under international agreement for service on Jessica as proposed by the NVOCCs. *In re BRF*, 2019 WL 257971, at *3.

While courts in this district, and across the country, have permitted service on domestic counsel under Rule 4(f)(3), the movant must show "adequate communication between the individual and the attorney." *In re GLG Life Tech*, 287 F.R.D. at 267; *see also*, *Crockett v. Luitpold Pharm., Inc.*, No. 19-276, 2020 WL 4039046, at *3 (E.D. Pa. July 17, 2020) (same). Here, there is no question that Chidori and Jessica have more than adequately communicated with their U.S. counsel. Their U.S. counsel facilitated the terms and execution as attorney-in-fact of a letter of undertaking to secure certain NVOCCs' claims. (Tisdale Decl., ¶5). Chidori and Jessica have both been active in this MDL Action in one form or another. In these circumstances, it is impossible to conclude that Chidori and Jessica have not been in adequate contact with their U.S. counsel, and, as such, the NVOCCs have carried their burden. In its discretion, the Court should authorize service on U.S. counsel for Chidori and Jessica.

### 2. *Smart Study Co. v. Acuteye-US* is inapplicable to the requested manner of alternative service.

The Court has instructed counsel to address the holding in *Smart Study Co. v. Acuteye-US*, 1:21-cv-5860-GHW, 2022 WL 2872297 (S.D.N.Y. July 21, 2022), and explain its application, if any, to this motion for alternative service permitting service on domestic counsel of the Vessel Interests. (MDL Action, ECF Nos. 178, 179, 180). As discussed *supra*, the international conventions would *not be violated*, as the NVOCCs' proposed method of *alternative service would be effectuated within the United States.* (Emphasis added). Thus, no documents would be transmitted abroad.

12

In *Smart Study Co.*, the plaintiff filed a sealed complaint for copyright infringement, a temporary restraining order ("TRO"), and a motion for alternative service, authorizing service on defendants by e-mail. *Id.* at *1-2. In plaintiff's original memorandum, it argued that the Hague Convention did not apply, and even if it did, service by e-mail on defendants in China was not prohibited by the Hague Convention. *Id.* at *5-6. After the court granted plaintiff's motion for alternative service, two defendants moved to dissolve the TRO, arguing that the court lacked personal jurisdiction over the defendants because service via e-mail on Chinese defendants was not permissible under the Hague Convention, and thus was not permissible under Federal Rule of Civil Procedure 4(f). *Id.* at *7. After hearing oral arguments on the motion to dissolve the TRO, the court held that it lacked personal jurisdiction over the defendants, as they are located in China, and the original service required documents to be *transmitted abroad*. *Id.* at *10-15. (Emphasis added). The court reasoned that e-mail service on defendants *located in China* was prohibited by the Hague Convention, as China objected to service via postal channels under the Article 10(a) of the Hague Convention and has not agreed to e-mail as a suitable substitute for service via the Hague Convention. *Id.* at *7-10 (emphasis added).

*Smart Study Co.* is distinguishable from the instant case. Here, as was outlined in *GLG Life Tech.*, the NVOCCs move to serve the foreign defendants' domestic counsel by e-mail or First-Class mail in the United States, obviating the need to transmit documents abroad. 287 F.R.D. at 267. NVOCCs are also willing to retain a process server for personal service on U.S. counsel. Unlike the defendants in *Smart Study Co.*, which were all located in China and where service was ordered on them via e-mail abroad, NVOCCs seek to serve Vessel Interests domestic counsel that:

1)     Are all physically located in the United States;

2)     Have appeared in the MDL Action, and member cases, on behalf of their clients;

13

3)   Have filed pleadings in the MDL Action, whether in a full or restricted capacity; and

4)   Have negotiated and executed, as attorney-in-fact, a letter of undertaking to provide security for claims asserted against the Vessel.

As such, international conventions on service would not apply to the method of service proposed by the NVOCCs; thus, *Smart Study Co.* is not applicable to the instant case.

**C.   Service on U.S. Counsel Comports with Due Process.**

Service of Chidori and Jessica through their U.S. counsel comports with due process. "The alternate method of service must comport with due process, which requires that it be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Sinohub, Inc.*, 2013 WL 4734902, at *1 (internal citations omitted).

The NVOCCs move this Court to authorize service on the U.S. counsel of Chidori, and Jessica, both of whom have appeared in the MDL Action, and have participated in some capacity. Notice to Chidori and Jessica of the NVOCCs' claims is virtually guaranteed by service on their respective U.S. counsel, although the NVOCCs contend that Chidori and Jessica are already fully aware of the claims. *See In re Sinohub, Inc.*, 2013 WL 4734902, at *2-3 (holding that a former CEO of a company was fully aware of the U.S. lawsuit by way of communication with his domestic counsel, thus, alternative service through domestic counsel was proper); *In re GLG Life Tech*, 287 F.R.D. at 267-68 (holding that service through counsel is certain to apprise the party of the pending action). There are no due process concerns in serving U.S. counsel of Chidori and Jessica, as they are both fully aware of the MDL Action and member cases, in addition to the certainty that notice would be achieved through their respective U.S. counsel. Thus, this Court should grant authorization of service in such a manner.

Dated: New York, NY
       November 23, 2022                            NVOCC Liaison Counsel,

                                                             /s/ Thomas L. Tisdale
                                     Thomas L. Tisdale
                                     Timothy J. Nast
                                     Tisdale & Nast Law Offices, LLC
                                     Chrysler Building
                                     405 Lexington Ave., 26th Floor
                                     New York, NY 10174
                                     ttisdale@tisdale-law.com
                                     tnast@tisdale-law.com

## CERTIFICATION OF SERVICE

I hereby certify that on November 23, 2022, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

                                                             /s/ Timothy J. Nast
                                     Timothy J. Nast