UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE:

*ONE APUS* CONTAINER SHIP INCIDENT ON
NOVEMBER 30, 2022

*This document relates to all actions*

22 Md. 3028 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

On November 8, 2022, the Court received three letters stating that various Non-Vessel Operating Common Carriers ("NVOCCs") intended to move to serve, via alternative process, certain defendants and third-party defendants. *See* Dkts. 168, 169, 174. These were a "group letter" from the NVOCCs' liaison counsel, Dkt. 168; a letter from individual NVOCC TopOcean Consolidation Service Inc. ("TopOcean"), Dkt. 169; and a letter from NVOCCs Damco International B.V. and Maersk Logistics & Services International A/S (collectively, "Damco"), Dkt. 174. On November 9, 2022, the Court ordered each party to move for alternative service and address the effect of *Smart Study Co., Ltd. v. Acuteye-Us*, No. 21 Civ. 5860 (GHW), 2022 WL 2872297 (S.D.N.Y. July 21, 2022), if any, on the validity of service by emailing the relevant domestic counsel. *See* Dkts. 178–180. On November 23, 2022, the parties filed their motions, Dkts. 198, 202, 205, and supporting memoranda of law, Dkts. 199 ("NVOCCs' Motion"), 203 ("TopOcean Motion"), 206 ("Damco Motion").

These motions seek authority to serve defendants and third-party defendants located in Japan, Panama, South Korea, and Singapore through these parties' United States-based counsel. No response or opposition to the motions for alternative service has been filed. Because these motions raise common issues, the Court addresses them together.

## I. Legal Standards

### A. Rule 4(f)(3)

Under Federal Rule of Civil Procedure 4(f)(3), "a Court may fashion means of service on an individual in a foreign country, so long as the ordered means of service (1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process." *SEC v. Anticevic*, No. 05 Civ. 6991 (KMW), 2009 WL 361739, at *3 (S.D.N.Y. Feb. 13, 2009) (citations omitted). Under Rule 4(f), service of process on foreign corporations may be made in the same manner as on individual defendants. *See* Fed. R. Civ. P. 4(h)(2); *F.T.C. v. PCCare247 Inc.*, No. 12 Civ. 7189 (PAE), 2013 WL 841037, at *2 (S.D.N.Y. Mar. 7, 2013).

"Service of process under Rule 4(f)(3) is neither a last resort nor extraordinary relief. It is merely one means among several which enables service of process on an international defendant." *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 115 (S.D.N.Y.2010) (citation omitted). "The decision of whether to order service of process under Rule 4(f)(3) is 'committed to the sound discretion of the district court.'" *United States v. Lebanese Canadian Bank*, 285 F.R.D. 262, 266 (S.D.N.Y. 2012) (quoting *Madu*, 265 F.R.D. at 115); *see also In re S. African Apartheid Litig.*, 643 F.Supp.2d 423, 433 (S.D.N.Y. 2009) ("A court is afforded wide discretion in ordering service of process under Rule 4(f)(3)." (citation omitted)); *Anticevic*, 2009 WL 361739, at *3 ("[Rule 4(f)(3)] provides the Court with flexibility and discretion empowering courts to fit the manner of service utilized to the facts and circumstances of the particular case." (citation omitted)).

"A plaintiff is *not* required to attempt service through the other provisions of Rule 4(f) before the Court may order service pursuant to Rule 4(f)(3), [but][a] district court may nonetheless require parties to show that they have reasonably attempted to effectuate service on the defendant(s) and that the circumstances are such that the district court's intervention is

necessary." *Anticevic*, 2009 WL 361739, at *3 (citation omitted) (emphasis in original); *see also Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002) ("[T]he advisory notes [to Rule 4] suggest that in cases of 'urgency,' Rule 4(f)(3) may allow the district court to order a 'special method of service,' even if other methods remain incomplete or unattempted."); *Madu*, 265 F.R.D. at 115 ("[D]istrict courts may impose a threshold requirement for parties to meet before seeking the court's assistance." (citation omitted)).

## II.    Discussion

### A.    The NVOCCs' motion

Through liaison counsel, the NVOCCs seek authority to serve summonses, verified complaints, third-party complaints, fourth-party complaints, crossclaims, and any other pleadings asserting claims against Chidori Ship Holding LLC ("Chidori") and Jessica Ship Holding S.A. ("Jessica"), through their respective U.S. counsel, by personal service, First-Class mail, and/or email.[1] NVOCCs' Motion at 1. The NVOCCs previously requested that Chidori and Jessica—who are located in Japan and Panama, respectively—waive service, given their prior participation in this multidistrict litigation through counsel, but Chidori and Jessica's counsel represented that they were not authorized to do so. *Id.* at 2; Dkt. 200, ¶ 7 (liaison counsel's declaration). The Court grants the NVOCCs' Motion.

Service through counsel is not prohibited by international agreement. Japan, where Chidori is located, is a signatory of the Hague Convention on the Service Abroad of Judicial and

---

[1] Alternatively, inasmuch as the NVOCCs are proposing to use alternative service for documents *other than* the summons and complaint—apparently, by Rules 5(b)(1) or 5(b)(2)—courts in this district have held that the Hague Convention applies only to the initial service of process, not subsequent documents. *See, e.g., SEC v. Credit Bankcorp, Ltd.*, No. 99 Civ. 11395 (RWS), 2011 WL 666158, at *4 (S.D.N.Y. Feb. 14, 2011); *S&S Machinery Corp. v. Wuhan Heavy Duty Mach. Tool Grp. Co., Ltd.*, No. 07 Civ. 4909, 2012 WL 958528 (E.D.N.Y. Jan. 13, 2012); *see also PCCare247 Inc.*, 2013 WL 841037, at 2 n.3 (noting, but not holding, the same).

Extrajudicial Documents (the "Hague Convention"), and Panama, where Jessica is located, is a signatory of the Inter-American Convention ("IAC"). Service on Chidori's counsel "would not run afoul of the Hague Convention . . . [because] no documents would be transmitted abroad." *In GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 267 (S.D.N.Y. 2012); *see, e.g.*, *Baliga ex rel. Link Motion Inc. v. Link Motion Inc.*, No. 18 Civ. 11642 (VM) (DF), 2020 WL 5350271, at *11 (S.D.N.Y. Sept. 4, 2020) (approving service by serving Chinese defendant through his counsel). *Cf. Smart Study*, 2022 WL 2872297, at 6–7 (considering only service on foreign defendants via postal mail and email). The IAC also does not prohibit any particular method of service. *See In re BRF S.A. Sec. Litig.*, No. 18 Civ. 2213 (PKC), 2019 WL 257971, at *3 (S.D.N.Y. Jan. 18, 2019); *see, e.g.*, *Wash. State Inv. Bd. v. Odebrecht S.A.*, No. 17 Civ. 8188 (PGG), 2018 WL 6253877, at *5 (S.D.N.Y. Sept. 21, 2018) (approving service on domestic counsel of a company located in Brazil, a signatory to the IAC).

Service of Chidori and Jessica through their United States's counsel also comports with due process—that is, it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Anticevic*, 2009 WL 361739, at *4 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). "Service by email alone comports with due process where a plaintiff demonstrates that the email is likely to reach the defendant." *PCCare 247 Inc.*, 2013 WL 841037, at *4; *see also In GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. at 267 (approving service of foreign defendant through domestic counsel where court satisfied there had been "adequate communication between the individual and the attorney"). Particularly as each defendant is represented by counsel that have appeared in this multidistrict action, *see* NVOCCs' Motion at 7 n.3; *id.* at 14, and have email addresses registered with the Electronic Court Filing

system, notice through those same counsel seems highly likely to alert Chidori and Jessica to the NVOCCs' claims, if they are not already aware of them.

Finally, the Court determines that alternative service is warranted under this case's circumstances. The NVOCCs made good-faith efforts to serve Chidori and Jessica by other means. *See PCCare247 Inc.* 2013, WL 841037, at *6. They inquired whether Chidori and Jessica would waive service and sent waivers of service and accompanying pleadings to them. *See* NVOCCs' Motion at 7. When the waivers were not returned, the NVOCCs contacted the U.S. Department of Justice's contracted company for serving judicial and extrajudicial documents, which informed them that service in Panama under the IAC and Japan, under the Hague Convention, would take six months to a year. *Id.* at 4. Courts in this Circuit routinely permit alternative service where such multi-month delays would "unnecessarily delay th[e] case." *In GLG Life Tech. Corp. Sec. Litig.*, 287 F.R.D. at 266 (collecting cases) (six- to eight-month delay); *PCCare247 Inc.*, 2013 WL 841037, at *6 (five-month delay that was ongoing)

### B. TopOcean's Motion

For similar reasons, the Court grants TopOcean's Motion to serve summons and verified complaints on defendant Hyandai Merchant Marine ("HMM"), a South Korean corporation, *see* TopOcean Motion at 4, and Chidori and Jessica, through their respective United States-based counsel. Top Ocean Motion at 1. Top Ocean moves on behalf of defendants/third-party plaintiffs American International Cargo Service, Inc. and DJR Logistics, Inc., and plaintiffs, AIT Worldwide Logistics, Inc., C.H. Robinson International, Inc., TopOcean Consolidation Service Inc., and WorldBridge Logistics, Inc. (collectively, "TopOcean").

Service by alternative means is warranted as to TopOcean's request. Like Chidori and Jessica, HMM rejected the request to waive service, *see id.* at 2, and TopOcean had been

informed that service in South Korea would take six-to-eight months, *see id.* at 12; Dkt. 204, Ex. G (response from ABC Legal).

Service through counsel is also not prohibited by international agreement and comports with due process for the same reasons stated regarding the NVOCCs' Motion. South Korea is a signatory to the Hague Convention. *See supra* Section II.A; *In GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. at 267 (service "would not run afoul of the Hague Convention since in both instances no documents would be transmitted abroad"); *Link Motion Inc.*, 2020 WL 5350271, at *11 (approving service by serving Chinese defendant through his counsel); *see also supra* (*Smart Study* inapposite). As to due process, HMM has multiple domestic counsel based in California, who have appeared on the docket of member cases within this multidistrict litigation—at least one, as recently as October 26, 2022, *see* 22 Civ. 6386, at Docket 165—responded to emails from opposing counsel, and otherwise appear to be in adequate communication with their client. *See* TopOcean Motion at 5; *In GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. at 267 (approving service of foreign defendant through domestic counsel where there was "adequate communication between the individual and the attorney").

### C. Damco's Motion

Damco seeks authority to serve defendant/third-party defendant NYK Shipmanagement PTE LTD ("NYK"), which is located in Singapore, either directly via email and/or through NYK's counsel, also via email. Damco Motion. The Court grants this request and authorizes Damco to serve NYK through its domestic counsel.

As with the NVOCCs and TopOcean, Damco requested a waiver of service from NYK, but was refused. *See* Damco Motion at 3; *id.*, Ex. 1 ¶ 5. Damco did not attempt further service under Rule 4(f)(2), and does not represent that effecting such service would cause multiple-month delay comparable to those discussed in the NVOCCs' and TopOcean Motions. *See*

Damco Motion at 9. Although there is "no requirement that a party exhaust efforts to effect service pursuant to . . . [Rule] 4(f)(2)' before seeking alternative service under Rule 4(f)(3), courts will ordinarily permit alternative service only where the moving party shows that it 'has reasonably attempted to effectuate service on the defendant,' and that 'the circumstances are such that the court's intervention is necessary.'" *CKR Law LLP v. Anderson Invs. Int'l, LLC*, 525 F. Supp. 3d 518, 523–24 (S.D.N.Y. 2021) (quoting *Convergen Energy LLC v. Brooks*, 20 Civ. 3746 (LJL), 2020 WL 4038353, at *4 (S.D.N.Y. July 17, 2020)); *see also In GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. at 265 ("Courts have repeatedly recognized that there is no hierarchy among the subsections in Rule 4(f)." (internal quotation marks omitted)). Given the unusual complexity and scale of this multidistrict litigation, and the resultingly greater harm from unnecessary delays, the Court exercises its discretion to permit alternative service, in light of the below.

Singapore is not a signatory to the Hague Convention.[2] *See* Damco Motion at 6. The Court is unaware of any international agreement prohibiting service by email to a Singapore-based defendant, *see, e.g., Assef v. Does 1-10*, No. 15 Civ. 1960 (MEJ), 2016 WL 1191683, at *3 (N.D. Cal. Mar. 28, 2016) (permitting service by email to Singapore), or service via United States-based counsel, *see* Damco Motion at 8 (requesting authorization to effect service, in the alternative, on NYK's domestic counsel).

Nor does Singaporean law prohibit service through counsel or by email, such that approving Damco's request would run afoul of Rule 4(f)(2). *See* Fed. R. Civ. P. 4(f)(2)(C) (permitting service by a method reasonably calculated to give notice, "unless prohibited by the

---

[2] Accordingly, the logic of *Smart Study* does not apply. *See* 2022 WL 2872297, at 6–7 (service was improper under the Hague Convention).

foreign country's law"). In fact, Singaporean law seems to permit such service. The Singapore Supreme Court of Judicature Act (Chapter 332), which was operative as of April 1, 2022, states that "any document that is required to be served under these Rules may be served by way of . . . (a) personal service [or] (b) ordinary service." *See* Dkt. 266-2 (citing Rules of the Court 2021, Order 7, Rule 1). "Ordinary service," in turn, may be achieved "by electronic mail at the electronic mail address provided by the party to be served," or "in any manner which the Court may direct, including the use of electronic means." *Id.* (citing Order 7, Rule 3). The Act also grants courts broad authority to "in an appropriate case, dispense with personal service or with ordinary service or with service altogether," *id.* (citing Order 7, Rule 1).

Finally, as above, Damco has also shown that such emails are likely to reach the defendant, such that service would comport with due process. NYK's counsel has appeared in various member cases of this multidistrict litigation, has a registered email with the Electronic Court Filing system, and has responded to Damco's counsel from that email address as recently as November 14, 2022. *See* Damco Motion at 3; *PCCare 247 Inc.*, 2013 WL 841037, at *4; *In GLG Life Tech Corp.*, 287 F.R.D. at 267 (approving service of foreign defendant through domestic counsel where there was "adequate communication between the individual and the attorney").

## CONCLUSION

For the foregoing reasons, the Court grants the motions pending at dockets 198, 202, and 205. The Court orders the movants to serve the domestic counsel of each relevant defendant/third-party defendant by courier, process server, and email. *See* Dkt. 198, Ex. 1 (proposed order, suggesting the same); Dkt. 202, Ex. 1 (same). Although Damco's Motion

requested service by email only, Dkt. 205, Ex. 1, the Court orders Damco to serve NYK's domestic counsel by courier, process server, and email, as well.

The moving parties are ordered to file proof of service on the dockets of this multidistrict litigation, and the relevant member cases, by December 8, 2022. The Clerk of the Court is respectfully directed to terminate the pending motions at docket numbers 198, 202, and 205.

SO ORDERED.

*Paul A. Engelmayer*
PAUL A. ENGELMAYER
United States District Judge

Dated: December 2, 2022
      New York, New York